UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOMIAH WASHINGTON,

          Petitioner,          Case No. 18-cv-12139
                                           Hon. Matthew F. Leitman

v.

WILLIS CHAPMAN,

          Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jomiah Washington is a state prisoner currently confined at the Thumb Correctional Facility in Lapeer, Michigan. On July 9, 2018, Washington filed a *pro se* petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") (*See* ECF No. 1.) In the Petition, Washington challenges his state-court convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316; assault of a pregnant individual intentionally causing miscarriage, stillbirth, or death, Mich. Comp. Laws § 750.90b(a); mutilation of a dead body, Mich. Comp. Laws § 750.160; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b.

1

The Court has carefully reviewed Washington's claims and concludes that he is not entitled to federal habeas relief. Accordingly, for the reasons stated below, the Court **DENIES** the Petition.

**I**

The facts underlying Washington's convictions are as follows.

In May 2011, the burned body of a woman named Daborah Young was found in a field. Young had been fatally shot in the head. At the time of Young's death, she was approximately 20 weeks pregnant.

Washington became a prime suspect in Young's murder. He was the father of Young's unborn child, and several witnesses said that Washington had threatened to kill Young if she did not have an abortion. Another witness said that Washington had also choked Young on a prior occasion.

The only witness to directly link Washington to Young's murder and the burning of her body was a woman named Amanda Baer. Baer is the mother of Washington's two children. On June 23, 2011, before the State filed charges against Washington, Baer appeared at an investigative subpoena hearing. During that hearing, Baer testified under oath that Washington had told her that he shot and killed Young, but the shooting was an accident. Baer further testified at the investigative subpoena hearing that Washington had admitted to disposing of Young's body.

Not long after Baer testified at the investigative subpoena hearing, Washington was arrested and charged with Young's death. His preliminary examination was held over four days in December 2011 and May and June 2012.

Baer testified at the preliminary examination. By that time, she had a change of heart and no longer wanted to implicate Washington in Young's death. During her testimony, she repudiated most, if not all, of her testimony from the investigative subpoena hearing that incriminated Washington. More specifically, Baer testified that prior to the investigate subpoena hearing, a detective investigating Young's murder, Brian Bowser, had her (Baer) arrested. Baer said that Bowser told her that if she did not implicate Washington in Young's death, Bowser would take Baer's children away from her and force Baer, who was pregnant at the time, to give birth in custody.

The prosecution then confronted Baer with her testimony from the investigative subpoena hearing that Washington had admitted to shooting Young and disposing of her body. Baer confirmed that she gave that testimony, but she said that it was not true and that she made it up in order to placate Bowser:

> Q: The next question I [the prosecutor] asked you [at the investigative subpoena hearing] was "What was the very first version of the story that [Washington] told you?" And your answer was "He was playing with his gun in the backyard. His gun went off, and he went in the front yard and there was a girl shot." Is that true that he –

A:  I said that but I only said that because they told me if I didn't come up with some type of story they were going to take my kids, put me in jail for accessory to murder that I didn't do.  So I said what I had to say to get out of my situation.

Q:  Okay.  You said that but it wasn't true?

A:  Right.

[….]

A:  Because me and Detective Bowser – he already went over so many things with me for those two, three days I was in jail.  I was sitting on hard cement all day.  We went over all that already.  That's how I came with my answers because to get out of my situation, this is what I had to do. I had to go on a report and I had to say [Washington] did this, that, and other to get out of it.  That's basically what [Bowser] explained to me, that, "If you say that [Washington] did that, I don't care if you did it or not, if you say that [Washington] did it then you're free."  So I was gone."

(Prelim. Exam. Tr., ECF No. 8-3, PageID.443, 454; *see also id.* at PageID.455.)  At the conclusion of the preliminary examination, the state court was faced with both (1) Baer's confirmation that she incriminated Washington at the investigative subpoena hearing and (2) Bear's insistence that that incriminating testimony was not true.  The state court then considered the entirety of Baer's testimony and all of the other evidence presented at the preliminary examination, and it concluded that there was enough evidence to bind Washington over for trial.

At trial, Baer was called as a witness.  However, she invoked her Fifth Amendment right against self-incrimination and did not testify.  Instead, the prosecution read Baer's testimony from the preliminary examination into the record. Importantly, as quoted above, that preliminary examination testimony included the prosecution reading back to Baer portions of her testimony from the investigative subpoena hearing in which she implicated Washington in Young's death.  Therefore, the jury heard both (1) Baer's statements from the investigative subpoena hearing implicating Washington and (2) Baer's assertion at the preliminary examination that those incriminating statements were false and coerced by Bowser.

On April 18, 2013, a jury convicted Washington of all charges.  The state trial court subsequently sentenced him to life in prison for the murder conviction, time served on the mutilation of a dead body conviction, eight-to-fifteen years for the assault conviction, and a consecutive two-year sentence for felony firearm.

Washington appealed his convictions to the Michigan Court of Appeals, and that court affirmed. *See People v. Washington*, 2014 WL 4628883 (Mich. Ct. App. Sept. 16, 2014.  The Michigan Supreme Court thereafter denied leave to appeal. *See People v. Washington*, 863 N.W. 2d 58 (Mich. 2015).

Washington then filed a post-conviction motion for relief from judgment in the state trial court.  That court denied the motion on May 25, 2016. *See People v. Washington*, Wayne Cir. Ct. Case No. 12-006201-FC (Wayne Cir. Ct. May 25,

2016). The Michigan appellate courts then denied Washington leave to appeal that decision. *See People v. Washington*, Mich. Ct. of Appeal Case No. 334514 (Mich.Ct.App. Nov. 23, 2016); *lv. den.* 908 N.W.2d 886 (Mich. 2018), *reconsideration denied*, 913 N.W.2d 313 (Mich. 2018).

## II

Washington, appearing *pro se*, filed the Petition in this Court on July 9, 2018. (*See* Pet., ECF No. 1.) Washington described his claims, and the standards he believes that the Court should apply to those claims, as follows:

I.      Where [Washington] was denied his constitutional right to a public pre-trial hearing, habeas relief is appropriate because the state court's decision was both contrary to clearly established federal law and involved an unreasonable determination of the facts.

II.     Trial counsel was constitutionally ineffective for (a) failing to obtain copies of the interviews by police officers with Amanda Baer so that he could properly cross-examine her at the preliminary examination, and (b) failing to object to the pretrial courtroom closure.

III.    [Washington's] conviction was predicated on coerced testimony police-induced, by threats made upon the prosecutor's key witness in violation of the Fourteenth Amendment right to due process of law, which rendered the entire trial proceedings fundamentally unfair. Because the state courts did not reach the merits of this claim, review on habeas is de novo and the deference standard of 2254(d) does not apply.

IV.     [Washington] is entitled to habeas relief where the prosecutor knowingly presented false testimony in violation of due process of law. Because the state courts did not reach merits of this claim,

the deference standard of AEDPA does not apply, hence this Court should apply de novo review.

V.    Where the prosecution presented testimony that the shooting was accidental, the state court's finding that there was sufficient evidence of premeditation involved [was] an objectively unreasonable application of clearly established Supreme Court precedent, thus habeas relief is warranted.

VI.    [Washington] is entitled to habeas where he was denied counsel [at his district court arraignment] in violation of the Sixth and Fourteenth Amendment[s] of the United States Constitution.

VII.    Where appellate counsel failed to raise constitutional claims requested by [Washington] in the alternative, to purchase copies of the transcripts so that he could file a Standard 4 brief pro per, [Washington was] deprived of his right to effective assistance of appellate counsel, and also demonstrates good cause and prejudice for not presenting the claims on appeal as of right.

(*Id.*)


# III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F. 3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005). In this case, Washington first raised most of the claims in the Petition in his post-conviction motion for relief from judgment in the state trial court. The Michigan Court of Appeals and the Michigan Supreme Court both denied Washington's applications for leave to appeal the state court's denial of that motion in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Wayne County Circuit Court's opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. *See Hamilton v. Jackson*, 416 F. App'x. 501, 505 (6th Cir. 2011).[1]

---

[1] The state judge court judge procedurally defaulted several of Washington's claims pursuant to Michigan Court Rule 6.508(D)(3) because Washington failed to show cause and prejudice for failing to raise these claims on his appeal of right. However, the state judge also denied Washington's post-conviction claims on the merits. Thus, AEDPA's deferential standard of review applies to her opinion. *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013) ("We acknowledge that the state court's additional language discussing Moritz's failure to raise a choice-of-counsel claim in earlier appeals is a reference to procedural default. But this circuit's precedents leave no doubt that as long as the state court put forward a merits-based ground for denying post-conviction relief, its mentioning of procedural default as an alternative or even primary ground for denying relief does not preclude AEDPA deference.").

# IV

## A

Washington first argues that he was denied his Sixth Amendment right to a public pre-trial hearing because the judge presiding over his preliminary examination in Michigan's 36th District Court asked some people to leave the courtroom during Baer's testimony at the preliminary examination. The judge asked the spectators to leave after Baer complained that they were intimidating her. Washington raised this claim in his post-conviction motion for relief from judgment, and the state trial court rejected it:

> In defendant's case, the district court judge closed the court room, after the prosecutor's main witness, Amanda Baer, complained that she was being intimidated by person(s) in the audience. Defendant argues the court failed to consider alternatives to closing the court room pursuant to *Waller [v. Georgia*, 467 U.S. 39 (1984)], which violated his right to public hearing. This Court disagrees. In *Presley [Georgia*, 558 U.S. 209 (2010)], anyone associated with the case or the defendant, were expressly not allowed in the court room, and the trial judge closed the court room due to lack of space for the public at large. In defendant's case, protection of a witness from intimidation is clearly an overriding interest justifying the closure of the court room to the public. A witness has the right to testify without fear of reprisals from people who are attending the hearing in support of the defendant. *Waller, supra*. As such, this Court finds no violation of defendant's right to a public trial.

*People v. Washington*, Wayne Cir. Ct. Case No. 12-006201-FC, at ** 5–6 (ECF No. 8-24, PageID.2530-2531).

As the state court properly recognized, the clearly-established Supreme Court law with respect to the closure of a courtroom in a criminal case is found in *Waller v. Georgia*, 467 U.S. 39 (1984). In *Waller*, the Supreme Court held that the closure of a courtroom during a criminal proceeding does not violate a defendant's Sixth Amendment rights where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *See id.* at 48. But, unlike here, *Waller* involved the complete closure of a courtroom. As the United States Court of Appeals for the Sixth Circuit has recognized, *Waller* did not clearly establish that its specific four part test applies "where some spectators but not all are removed from [a] courtroom." *Drummond v. Houk*, 797 F.3d 400, 403. "The only principle from *Waller* that [is] clearly established for purposes of [a] partial closure [is] the general one that the trial court must balance the interests favoring closure against those opposing it." *Id.* at 404.

The state court did not unreasonably apply this clearly established "general" rule from *Waller* when examining the partial closure of the courtroom at the preliminary examination. In this case, during Baer's preliminary examination testimony, several witnesses in the gallery began making faces and laughing at Baer

10

in an attempt to distract and intimidate her. (*See* 12/9/2011 Prelim. Exam. Tr., ECF No. 8-2, PageID.244.) Baer pointed the witnesses out to the presiding judge and told the judge that she did not want those witnesses in the courtroom. (*See id.*) In response, the judge did not close the courtroom completely; instead, the judge simply asked the few disruptive spectators to leave. (*See id.*) The state trial court reviewing that decision did not unreasonably apply *Waller* when it concluded that the presiding judge appropriately balanced the interests for and against closure and concluded that it was most appropriate to ask the disruptive spectators to leave the courtroom in order to prevent them from intimidating a testifying witness. *See Drummond*, 797 F.3d at 402-03 (6th Cir. 2015) (denying habeas relief on basis that partial courtroom closure violated petitioner's right to a public trial and concluding that state court's application of *Waller* was not unreasonable).

## B

Washington next claims that he was denied the effective assistance of counsel. Ineffective-assistance claims are reviewed under the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in

the exercise of reasonable professional judgment." *Id*. at 690. Second, a defendant must show that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review, the question is "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.")

The Court will review each of Washington's ineffective assistance claims separately.

## 1

Washington first argues that his counsel was ineffective for failing to obtain copies of interviews police officers conducted with Baer. Washington insists that had counsel obtained copies of those interviews, counsel could have properly cross-examined Baer at the preliminary examination. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Washington claims that his trial lawyer was ineffective for failing to obtain copies of the interviews by police officers with Baer so that he could properly cross-examine her at the preliminary examination. However, Washington's

citation to the record in his brief on appeal does not
support his assertion that his lawyer failed to obtain copies
of the interviews. Washington has the burden to establish
the factual predicate for his ineffective assistance of
counsel claim and may not leave it to this Court to search
for the factual basis to sustain or reject his position.
Washington has not shown that his trial lawyer engaged in
an act or omission that fell below an objective standard of
reasonableness under prevailing professional norms.

*People v. Washington*, 2014 WL 4628883, at * 3 (internal citations omitted).

The Michigan Court of Appeals' decision was not unreasonable. Washington

did not present any evidence to the state court, nor any evidence to this Court, to

support this claim of ineffective instance. For instance, he has not presented

evidence that his counsel failed to obtain or review the police interviews with Baer.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary

support, do not provide a basis for federal habeas relief. *See Workman v. Bell,* 178

F.3d 759, 771 (6th Cir. 1998). Washington is therefore not entitled to federal habeas

relief, or an evidentiary hearing, on this claim. *See Cooey v. Coyle*, 289 F.3d 882,

893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)) (denying habeas relief and

evidentiary hearing on claim of ineffective assistance where petitioner "fail[ed] to

submit evidence" supporting the claim).

Washington next claims that his trial counsel was ineffective for failing to object to the partial closure of the courtroom during the preliminary examination. This claim fails because Washington cannot show the failure to object caused him prejudice. Counsel is not ineffective for failing to make a futile or meritless objection. See *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); United *States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000) (rejecting ineffective assistance claim and holding that because "any objection to the introduction of the records of prior felony convictions on the basis that they were obtained in violation of [defendant's] constitutional rights would have failed, [] trial counsel's failure to object to them on that basis was not deficient"). Here, Washington has not presented any evidence to undermine the basis of the magistrate's decision to ask the disruptive spectators to leave the courtroom. Nor has he provided any basis for the Court to conclude that the magistrate judge would have sustained any objection his counsel could have raised. Washington is therefore not entitled to federal habeas relief on this claim. *See Johnson v. Sherry*, 465 F. App'x. 477, 481 (6th Cir. 2012) (denying habeas relief and rejecting claim that counsel rendered ineffective assistance where counsel failed to object to closure of courtroom because "the judge would likely have overruled the objection, and the court of appeals would have likely affirmed").

## C

Washington next claims that his Due Process rights were violated when Bowser coerced Baer into testifying against him (Washington) at Washington's preliminary examination.

Washington raised this claim in his post-conviction motion for relief from judgment in the state trial court. The state judge on post-conviction review never addressed the merits of the claim because the judge mistakenly believed that the issue had been raised on direct appeal. *See People v. Washington*, Wayne Cir. Ct. No. 12-006201-FC, at *6. (ECF No. 8-24, PageID.2531). This Court will therefore review the claim *de novo*.[2]

Washington asserts that he is entitled to federal habeas relief on this claim based upon the decision in *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973). In *Bradford*, the United States Court of Appeals for the Sixth Circuit affirmed "the granting of a writ of habeas corpus" where the petitioner's conviction resulted from the "state's knowing use of coerced testimony obtained by torture, threats and abuse of a witness is in custody." *Id.* at 66. Washington insists that, like the petitioner in

---

[2] After this Court determined that the state court had failed to address this claim on the merits, it asked the parties to submit supplemental briefs addressing, among other things, the standard of review that this Court should apply to this claim. (*See* Order, ECF No. 10.) Respondent thereafter acknowledged that this claim "was not adjudicated on the merits in state-court proceedings," and that this Court should therefore "review the claim *de novo*." (Respondent Supp. Br., ECF No. 11, PageID.2776.)

*Bradford*, he is entitled to habeas relief because his conviction resulted from the "use of coerced testimony." *Id.*

The Court disagrees that *Bradford* compels habeas relief. In *Bradford*, it was *undisputed* that the conviction resulted from coerced testimony. But here, there is a factual dispute on that key issue. As described in detail above, Baer testified at the preliminary examination that Bowser threatened and coerced her to testify against Washington. But Bowser denies that he ever threatened Baer or pressured her to incriminate Washington. (*See* 4/12/2013 Trial Tr., ECF No. 8-15, PageID.1880-1884.) And Washington never presented any evidence or otherwise sought to resolve this factual dispute. For example, because Washington never asked the state court for an evidentiary hearing to resolve this dispute, the state court never conclusively determined whether Baer's testimony was in fact coerced. He therefore has not established that he is entitled to federal habeas relief on this claim. *See*, *e.g.*, *Carver v. Staub*, 349 F.3d 340, 351 (6th Cir. 2001) (noting that a habeas petitioner "has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation").

This Court cannot resolve now resolve the factual dispute regarding whether Baer's testimony was coerced. In order to resolve that factual dispute, the Court would need to hold an evidentiary hearing. But AEDPA bars the Court from doing so. Under AEDPA where, as here, a petitioner has failed to develop a factual basis

for his claim in state court, a federal court may hold an evidentiary hearing only in certain limited circumstances:

> [where an] applicant has failed to develop the factual basis of a claim in State court proceedings, [a district] court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i)      a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii)      a factual predicate that could not have been previously discovered through the exercise of due diligence;

28 U.S.C. § 2254(e)(2).[3]

Washington has not satisfied either of these exceptions. First, Washington has not even attempted to argue that the Court should hold an evidentiary hearing because of a "new rule of constitutional law." Second, Washington has failed to establish that "the factual predicate [of his coercion claim] could not have been previously discovered through the exercise of due diligence." *Id.* Under this provision, "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."

---

[3] This provision of AEDPA applies where "a claim has not been adjudicated on the merits in a state court proceeding." *Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 464 (6th Cir. 2012).

*Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 464 (6th Cir. 2012)

(quoting *Williams v. Taylor*, 529 U.S. 420, 437 (2000)). Here, Washington raised

his claim that Baer was coerced in his post-conviction motion for relief from

judgment. But he never moved the state court for an evidentiary hearing on this

claim. Nor has he ever argued that his counsel was ineffective for failing to seek

such an evidentiary hearing.[4]

Simply put, this Court cannot hold an evidentiary hearing because

Washington did not exercise the required diligence in state court. And without

holding an evidentiary hearing, the Court cannot resolve the disputed question of

fact regarding Baer's testimony in Washington's favor. Washington is therefore not

entitled to federal habeas relief on this claim.

## D

Washington next asserts that prosecution violated his Due Process rights when

the it knowingly presented perjured testimony at Washington's trial. More

specifically, Washington claims that Baer's testimony at the investigative subpoena

---

[4] Importantly, while Washington's trial counsel did not move to exclude Baer's testimony from the investigative subpoena hearing on the ground that it was coerced, he did argue to the jury during closing arguments that Baer had admitted that she "committed perjury" and "lied over and over again" at the investigative subpoena hearing. (4/17/2013 Trial Tr., ECF No. 8-17, PageID.2060-2061.) He also argued to the jury that they should disbelieve Baer's testimony incriminating Washington at the investigative subpoena hearing because that testimony was Baer's "only way out" of jail. (*Id.*, PageID.2162; *see also id.*, PageID.2060-2063.)

hearing that Washington had incriminated himself was false and that the prosecutor knew this testimony was false when the prosecutor had that testimony read into the record at Washington's trial.[5]

Washington is not entitled to federal habeas relief on this claim. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *See Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Id.* Moreover, the fact that a witness contradicts himself or herself or changes his or her story does not establish perjury. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003). Finally, allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence in the record. See *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971) ("allegations" that "do no more

---

[5] Washington raised this claim in his post-conviction motion for relief from judgment in state court. The state court declined to rule on it though because the state court held that the Michigan Court of Appeals had rejected this argument on direct appeal. *People v. Washington*, Wayne Cir. Ct. No. 12-006201-FC, at *6 (ECF No. 8-25, Page ID. 2702). However, while the Michigan Court of Appeals did address an argument that Washington raised on direct appeal with respect to Bear's testimony at the investigative subpoena hearing, it is not clear from the Michigan Court of Appeals' decision that it addressed this claim specifically. Out of an abundance of caution, this Court will review the claim *de novo*.

than establish the appearance of inconsistencies in testimony" are insufficient to establish the knowing use of perjured testimony by the prosecution).

Here, for all of the reasons explained above, there is an unresolved factual dispute with respect to whether Baer offered false testimony at the investigative subpoena hearing. Therefore, Washington has not made a clear showing of perjury. Moreover, Washington has not shown or identified any evidence that the prosecution knew that Baer had testified falsely at the investigative subpoena hearing when it had that testimony read into the record at Washington's trial. Washington is therefore not entitled to federal habeas relief on this claim.

## E

Washington next claims that there was insufficient evidence to convict him of first-degree premeditated murder because there was insufficient evidence of premeditation. Washington also suggests that there was insufficient evidence to establish his identity as the shooter.

Washington raised an insufficiency-of-the-evidence claim in his post-conviction motion for relief from judgment in the state trial court. The state judge rejected the claim and held that there was sufficient evidence of premeditation to support Washington's first-degree murder conviction. *See People v. Washington*, Wayne Cir. Ct. No. 12-006201-FC, at \*11 (ECF 8-25, PageID.2707).

The clearly established federal law governing Washington's sufficiency of the evidence claim is found in the line of Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause. In *In re Winship*, 397 U.S. 358, 364 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The review of insufficiency of the evidence claims under the *Jackson* standard is especially deferential in the habeas context. In habeas proceedings, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict and a second to the decision by the state appellate court. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson*, 443 U.S. at 319) (emphasis in Jackson). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable

doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* When applying these two layers of deference, the Court's task is to "determine whether the [ ] [last court of review] itself was unreasonable in its conclusion that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt based upon the evidence introduced at trial." *Id.* (emphasis in original).

The state trial court did not unreasonably conclude that there was sufficient evidence of premeditation. Under Michigan law, premeditation may be established through evidence of "(1) the prior relationship of the parties, (2) defendant's actions before the killing, (3) the circumstances, including the wound's location, of the killing, and (4) defendant's conduct after the killing." *Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004). *See also People v. Anderson*, 531 N.W.2d 780, 786 (Mich. App. 1995). Premeditation under Michigan law may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964).

Here, the evidence established that Washington and the victim had a prior relationship, Washington had previously threatened the victim, the victim had been shot in the head, and that Washington had attempted to conceal his crime by burning the victim's body after the murder. Under these circumstances, it was not

unreasonable for the state court to conclude that there was sufficient evidence of premeditation.

Washington further argues that there was insufficient evidence to establish his identity as the shooter. But, as described above, Baer testified at the investigative subpoena hearing that Washington had told her that he had shot the victim. "[A]n admission by the accused identifying himself (or herself) as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F. 2d 490, 494 (8th Cir. 1979); *See Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (petitioner's identity as murderer supported in part by evidence that he confessed several times to murdering sister). Moreover, Washington's prior threats to kill the victim was additional evidence to permit a rational trier of fact to conclude that petitioner was the person who murdered the victim. *See Pinchon v. Myers*, 615 F. 3d 631, 643-44 (6th Cir. 2010).

Washington counters that there was insufficient evidence to convict him because the police did not recover DNA evidence, fingerprints, or other forensic evidence to convict him of premeditated murder. But "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x 871, 882 (6th Cir. 2016).

For all of these reasons, Washington is not entitled to federal habeas relief based on the insufficiency of the evidence.

**F**

Next, Washington that he was denied his Sixth Amendment right to counsel because he was not represented by an attorney at his initial arraignment on the warrant Michigan's 36th District Court. Washington raised this claim in his post-conviction motion for relief from judgment in the state trial court, and the state court rejected it. *See People v. Washington*, Wayne Cir. Ct. No. 12-006201-FC, at ** 11-12 (ECF 8-25, PageID.2707-2708).

Even assuming arguendo that Washington was denied the assistance of counsel at his arraignment on the warrant, he is not entitled to federal habeas relief because he has not shown how the absence of counsel at that proceeding caused him prejudice. The Supreme Court has held that the denial of counsel at an arraignment requires automatic reversal, without any harmless-error analysis, in only two situations: (1) when defenses not pled at arraignment were irretrievably lost, *see Hamilton v. Alabama,* 368 U.S. 52, 53–54 (1961); and (2) when a full admission of guilt entered at an arraignment without counsel was later used against the defendant at trial, despite subsequent withdrawal. *See White v. Maryland,* 373 U.S. 59, 60 (1963) (per curiam). Neither of those situations exists here. Washington is therefore not entitled to federal habeas relief on this claim. *See Whitsell v. Perini*, 419 F. 2d

95 (6th Cir. 1969) (petitioner not entitled to habeas relief based on fact that he was not represented by counsel at his arraignment where petitioner pleaded not guilty at arraignment and no incriminating statements were brought out and later used at trial); *Doyle v. Scutt*, 347 F. Supp. 2d 474, 481 (E.D. Mich. 2004) (same).

## G

Finally, Washington claims that his appellate counsel was ineffective for failing to raise certain unidentified claims on direct appeal that Washington later raised in his post-conviction motion for relief from judgment. Washington raised this claim in his post-conviction motion for relief from judgment in the state trial court, and the state court rejected it:

> [F]or Defendant to obtain postconviction relief for ineffective assistance of appellate counsel based upon counsel's failure to present all possible claims on appeal; he must show appellate counsel's representation fell below an objective standard of reasonableness and that appellate counsel's representation was constitutionally deficient. In order to establish a claim of ineffective assistance of appellate counsel, Defendant must show that appellate counsel was ineffective for failing to raise an issue on appeal. Defendant must overcome the presumption that the failure to raise an issue was sound appellate strategy and must establish that the deficiency was prejudicial. *People v. Reed*, 198 Mich App 639, 646-647; 499 NW2d 441 (1993), and *aff'd* 449 Mich 375; 535 NW2d 496 (1995). Here, Defendant has not done so. As this Court did not find merit in any of these issues appellate counsel decided not to pursue, Defendant cannot show he was prejudiced by appellate counsel's failure to raise any of the issues contained in this motion. MCR 6.508(D)(3). Under the deferential standard of review, appellate counsel's

decision to winnow out weaker arguments in pursuit of those that may be more likely to prevail is not evidence of ineffective assistance of counsel. *Reed*, *supra* at 391. Moreover, counsel's failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney. Thus, Defendant's ineffective assistance of counsel argument must fail.

*People v. Washington*, Wayne Cir. Ct. No. 12-006201-FC, at ** 12-13 (ECF No. 8-25, PageID.2708-2709). That decision was not unreasonable.

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). And for all of the reasons stated above, Washington has not shown that any of the claims that he wanted his appellate counsel to raise on direct review were meritorious. He therefore has not shown that he is entitled to federal habeas relief on this claim.

Washington also claims that his appellate counsel was ineffective for failing to provide Washington with the trial transcripts so that Washington could file his own supplemental *pro per* appellate brief. But a criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *See Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000). And by accepting the assistance of counsel, a criminal appellant waives his right to present *pro se* briefs on direct appeal. *See Myers v. Johnson*, 76 F. 3d 1330, 1335 (5th Cir. 1996); *See also Henderson v. Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio

1999); *aff'd in part, vacated in part on other grds* 262 F. 3d 615 (6th Cir. 2001) (defendant who was represented by counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation). Thus, a defendant does not have a constitutional entitlement to submit a *pro per* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by the defendant's appellate counsel. *See McMeans v. Brigano,* 228 F. 3d 674, 684 (6th Cir. 2000). Because Washington was represented by appellate counsel, any failure by the trial court or appellate counsel to provide him with trial transcripts so that he could prepare his own *pro per* brief did not violate Washington's constitutional rights. See *U.S. v. Dierling*, 131 F.3d 722, 734, n. 7 (8th Cir. 1997); *Foss v. Racette*, 2012 WL 5949463, at *4 (W.D.N.Y. Nov. 28, 2012). Washington is therefore not entitled to federal habeas relief on his ineffective assistance of appellate counsel claim.

## IV

In order to appeal the Court's decision, Washington must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Here, jurists of reason would not debate the Court's conclusion that Washington has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court will **DENY** Washington a certificate of appealability.

Finally, although this Court declines to issue Washington a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Washington's claims, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Washington permission to proceed *in forma pauperis* on appeal.

## V

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Washington's petition for a writ of habeas corpus (ECF No. 1); 2) **DENIES** Washington a certificate of appealability, and (3) **GRANTS** Washington permission to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 18, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 18, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764